IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LABORERS' COMBIND FUNDS OF | ) | |
| WESTERN PENNSYLVANIA, as agent | ) | |
| for PHILIP AMERIS and PAUL V. | ) | |
| SCABILLONI, trustees ad litem, | ) | Case No. 2:16-cv-01506 |
| LABORERS' DISTRICT COUNCIL OF | ) | |
| WESTERN PENNSYLVANIA WELFARE | ) | Magistrate Judge Lisa Pupo Lenihan |
| AND PENSION FUNDS, THE | ) | |
| CONSTRUCTION INDUSTRY | ) | |
| ADVANCEMENT PROGRAM OF | ) | ECF No. 26 |
| WESTERN PENNSYLVANIA, and its | ) | |
| affiliated local unions, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MACSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

<u>LENIHAN</u>, M.J.

Currently before the Court for disposition is the Motion to Compel Arbitration (ECF No. 26) filed by Defendant Macson Corporation ("Macson"). Macon contends that the West Jefferson Hills School District Project Labor Agreement ("PLA"), which contains a mandatory arbitration provision, governs the parties' dispute here, and therefore, Plaintiff is required to arbitrate its claim against Macson. Because Plaintiff has failed to submit its dispute to arbitration, Macson contends this Court lacks subject matter jurisdiction, and requests that this case be dismissed with prejudice, and attorneys' fees be awarded to it pursuant to 29 U.S.C. § 1132(g)(1). For the reasons set forth below, the

Court will deny Defendant's motion to compel arbitration.

## I.     FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff, the Laborers' Combined Funds of Western Pennsylvania ("Laborers' Combined Funds"), instituted this suit against Macson under §§ 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and also under § 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.  The Laborers' Combined Funds administers various fringe benefit funds, including the Laborers' District Council of Western Pennsylvania Welfare and Pension Funds ("Welfare & Pension Funds"),[1] and acts as a collection agent for such funds as well as for certain employer associations and unions, including the Laborers' District Council of Western Pennsylvania and its affiliated local unions, the Construction Industry Advancement Program of Western Pennsylvania.  (Compl., ¶¶ 2-5, ECF No. 1.)

Macson, a contractor engaged in the construction business, allegedly entered into a labor agreement with the Laborers' Union.[2]  (Id., ¶¶ 6-7.)  Plaintiff contends that pursuant to that agreement, Macson was obligated to submit certain monthly payments to it for pension, welfare, industry and dues for the benefit of employees covered under said agreement.  (Id., ¶ 7.)    Plaintiff further contends that based on that agreement and the provisions of ERISA, it has the right to examine and audit Macson's books and payroll records to determine whether Macson has made proper deductions, contributions,

_____

[1] The Welfare & Pension Funds are employee fringe benefit plans established and maintained within the meaning of ERISA.  (Compl., ¶ 5.)

[2] It is unclear to which labor agreement Plaintiff is referring, as it has not attached any "labor agreement" to the Complaint.

payments and remittances for all employees covered by the agreement. (*Id.*, ¶ 8.) Nonetheless, Plaintiff contends that Macson has failed to submit such reports and has refused to make available its books and payroll records for an audit, in violation of the agreement. (*Id.*, ¶ 9.) In addition, Plaintiff contends that Macson is obligated to it for all reasonable auditing and attorney's fees and other legal expenses incurred in securing the audit and collecting any delinquencies determined to be owed by Macson. (*Id.*, ¶ 10.)

For relief, the Plaintiff seeks injunctive relief to enjoin Macson from violating the terms of the labor agreement and directing Macson to make immediate payments of all monies past due and timely payments of all monies that become due to Plaintiff, pursuant to the labor agreement, among other things. (Compl., Ad damnum cl., ¶¶ (a) – (c).) Plaintiff also seeks a money judgment in its favor for (1) the amounts shown to be owed as a result of any audit, plus interest; (2) liquidated damages/late charges at 10 percent of the principal amount owed; (3) reasonable auditing fees and attorneys' fees equal to 20 percent of the total delinquency, but not less than $1,000.00; and, (4) costs of suit. (*Id.*, Ad damnum cl., ¶ (d).)

In response, Macson filed an Answer, and subsequently, a motion to compel arbitration which is the subject of this opinion.[3] Relevant to this pending motion, Macson

---

[3] Originally, Macson's motion to compel arbitration was titled, "Motion to Dismiss for Lack of Jurisdiction, for Failure of a Condition Precedent, and Motion for Failure to Exhaust Administrative Remedies," and was docketed at ECF No. 26 on 9/19/17. Subsequently, counsel for Macson made an Errata entry at ECF No. 37 on 10/27/17 attaching a Motion to Compel Arbitration in which he incorporated the motion and exhibits previously docketed at ECF No. 26, and requested that the Clerk of Court refile the motion at ECF No. 26 as a Motion to Compel Arbitration.

attached a copy of the Project Labor Agreement for the West Jefferson Hills School District Project, *see* Def.'s Ex. B to Motion to Compel Arbitration (ECF No. 26-2), and subsequently, filed a Brief in Support of its Motion to Compel Arbitration (ECF No. 32).

Plaintiff has filed a response and brief in opposition to the motion to compel arbitration (ECF Nos. 39 and 40). Macson has filed a reply to Plaintiff's opposition to the motion to compel arbitration (ECF No. 41) and a supporting brief (ECF No. 43). As the motion to compel arbitration has been fully briefed, it is now ripe for disposition.

## II. LEGAL STANDARD – MOTION TO COMPEL ARBITRATION

In *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 771 (3d Cir. 2013), the court of appeals clarified which standard of review should be applied in evaluating motions to compel arbitration:

> [W]hen it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Somerset*, 832 F. Supp.2d at 482. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Id.* After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not warranted because "the party opposing arbitration can demonstrate, by means of citations to the record," that there is "a genuine dispute as to the enforceability of the arbitration clause," the "court may then proceed summarily to a trial regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to

perform the same,' as Section 4 of the FAA envisions." *Id.*
(quoting 9 U.S.C. § 4).

*Id.* at 776.   Thus, "[m]otions to compel arbitration are reviewed under the Rule 12(b)(6)

standard '[w]here the affirmative defense of arbitrability of claims is apparent on the face

of a complaint (or . . . documents relied upon in the complaint).'"  *Gordon v. Kohl's Dep't*

*Stores, Inc.,* 119 F. Supp. 3d 356, 361 (E.D.Pa. 2015) (quoting *Guidotti,* 716 F.3d at 773-74)

(internal quotation marks omitted).

 In evaluating a motion to compel arbitration under the Rule 56 standard, courts

"'may consider all affidavits, exhibits and discovery in the record.'"  *Quilloin v. Tenet*

*HealthSystem Philadelphia, Inc.,* 763 F.Supp. 2d 707, 715 (E.D.Pa. 2011) (quoting *Hopkins v.*

*New Day Fin.,* 643 F.Supp. 2d 704, 713-14 (E.D.Pa. 2009) (citing *Par-Knit Mills, Inc. v.*

*Stockbridge Fabrics Co.,* 636 F.2d 51, 54 & n. 9 (3d Cir.1980))), *rev'd on other grounds,* 673 F.3d

221 (2012).  A motion to compel arbitration should be granted only where there is "'no

genuine issue of fact concerning the formation of the agreement'" to arbitrate.  *Kirleis v.*

*Dickie, McCamey & Chilcote,* 560 F.3d 156, 159 (3d Cir. 2009) (quoting *Par-Knit Mills,* 636

F.2d at 54).  "In making this determination, the party opposing arbitration is entitled to

'the benefit of all reasonable doubts and inferences that may arise.'" *Id.*

Here Plaintiff submits that the standard for a Rule 12(b)(6) motion to dismiss

should be applied to Macson's motion to compel arbitration.  However, the Complaint

on its face fails to assert any allegations suggesting that the stated claims may be subject

to an enforceable arbitration agreement.[4]  As such, the Court is unable to rule on the merits of Macson's motion merely on the factual allegations in the Complaint.

Moreover, Macson has relied on documents not referenced in the Complaint which it attached as exhibits to its motion to compel arbitration.  Macson submits that the Court may take judicial notice of these documents because they were received from Plaintiff's counsel and are not subject to reasonable dispute, citing Fed. R. Evid. 201(b). As such, Macson submits that the Court may consider these documents in deciding the motion to compel arbitration, *see* Affidavit of Kevin Fiore, ECF No. 37-3 at 2, but does not indicate which legal standard the Court should apply.

Although the Court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[,]" *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3dCir. 1993), here Plaintiff's claims are not based on the documents Macson has attached to its motion to compel arbitration.  Therefore, the Court may not consider the exhibits attached to its motion to compel arbitration under the Rule 12(b)(6) standard.

In response to Macson's motion to compel arbitration and supporting exhibits, Plaintiff has attached copies of the PLA, as well as copies of the relevant Trust Agreements.  *See* ECF Nos. 39-2 & 39-3.[5]  Moreover, both parties appear to be making

---

[4] The Complaint does not refer to or rely upon any documents that indicate the claims set forth in the Complaint are subject to arbitration.

[5] The relevant Trust Agreements consist of the Trust Agreement and Pension Plan (ECF No. 37-2) and the Laborers' District Council of Western Pennsylvania Welfare Fund Agreement and Declaration of Trust (ECF No. 39-3).

legal arguments based on the PLA and Trust Agreements, and neither party has indicated that discovery is necessary to decide the motion. As such, the Court will decide the motion to compel arbitration on the current record under the Rule 56 legal standard.

## III.    DISCUSSION

The Federal Arbitration Act ("FAA") "'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate . . ..'" 9 U.S.C. § 1, *et seq.*; *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). The FAA provides that a written arbitration provision in any contract "evidencing a transaction involving commerce is valid and enforceable, except upon "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.6    In addition, the FAA favors the enforcement of arbitration agreements, requiring that such agreement be enforced to the same extent as other contracts. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). The FAA also provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court . . . for an Order directing that such arbitration proceed in the manner provided in the agreement." 9 U.S.C. § 4.

The FAA clearly reflects a "strong policy in favor of the resolution of disputes through arbitration." *Kirleis*, 560 F.3d at 160 (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "[T]his presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Id.* (quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir.

2002)).  *See also Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 372 (1984) ("the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, even if those disputes raise questions of interpretation under the collective-bargaining agreements.")

As a threshold matter, the FAA requires the court to make the following determinations before ordering arbitration: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the specific dispute falls within the scope of that agreement.  *Olick*, 151 F.3d at 136 (explaining that a "district court need only engage in a limited review to ensure that the dispute is arbitrable").

As to whether a valid and enforceable agreement to arbitrate exists between Plaintiff and itself, Macson contends that the PLA is the controlling document in this action and contains an alternative dispute resolution provision which governs any disputes arising out of the interpretation or application of the PLA between the unions and contractors.  PLA, Art. VII, § 2 (ECF No. 26-2 at 11-12).  Under that provision, if the dispute is not resolved between the representative for the union, the contractor's representative, and the owner (school district) within 10 days, the matter must be referred to binding arbitration before the designated arbitrator.  *Id.* at § 3.

The parties to the PLA are the West Jefferson Hills School District ("Owner") and the Pittsburgh Regional Building and Construction Trades Council (the "Unions").  In addition, all contractors hired to work on the Project were required to agree to execute and become bound by the PLA.  PLA, Art. I, § 1 (ECF No. 26-2 at 1).  Macson executed a

Letter of Assent in which it agreed to be bound by the PLA.  *See* Letter of Assent, Ex. 1 to Def.'s Reply Br. (ECF No. 43-1).

Macson submits that Plaintiff's claims involve a dispute that arises out of the interpretation or application of the PLA between the Unions and contractors, and therefore, Plaintiff's claims must be settled by the arbitration procedure set forth under the PLA, despite the fact that Plaintiff is not a signatory to the PLA, because Plaintiff is admittedly the union's agent.   For support, Macson quotes the following language from Article XIII[6] of the PLA, which provides:

> Each contractor will also pay all required contributions in the amounts required by Section 1 of this Article to the established employee benefit funds that accrue to the direct benefit of the employees (such as pension and annuity, health and welfare, vacation, apprenticeship, training funds).. . . This section does not apply to core employees unless any core employee voluntarily elects to join and become a member of any local union signatory to this Agreement, in which event this Section shall immediately apply with respect to any such core employee.

PLA, Art. XIII, § 2 (ECF No. 26-2 at 17).  Macson argues that the $15,000 deficiency, which Plaintiff contends is owed based on its audit, is comprised of unpaid contributions for the employee benefits set forth in Section 2 above, and therefore, is subject to the ADR provision in the PLA.   Thus, Macson contends that because (1) it has not waived its right to arbitration or the ADR procedures set forth in the PLA, (2) the parties have provided for arbitration in their agreement that is the exclusive remedy, and (3) Plaintiff has failed

---

[6] Macson refers to Article XII in paragraph 5 of its motion to compel arbitration but in actuality it has quoted Article XIII of the PLA.  The Court believes this to be an inadvertent error.

to comply with the PLA's ADR provision, this Court lacks jurisdiction over the subject matter of this dispute and this case should be dismissed.

However, Macson conveniently excludes the second sentence of Section 2 quoted above, which provides that "[w]ith respect to contributions required in this Section to Employee-Union jointly trusted funds, the contractor adopts and agrees to be bound by the written terms of the legally established trust agreement specifying the detailed basis on which payments are to be made into, and benefits paid out of such Trust Funds." *Id.* ([ECF No. 26-2 at 17-18](#)).    In the Court's opinion, the excluded language is fatal to Macson's argument, especially since the trust agreements explicitly disclaim any obligation on the part of the trustees to invoke or exhaust any grievance or arbitration procedure contained in any CBA or other written agreement with an employer, in order to compel an audit of the employer's records or collect unpaid contributions.

In response to the motion to compel arbitration, Plaintiff has attached two trust agreements which it claims are determinative of the outcome here:  (1) The Trust Agreement and Pension Plan between the Master Builders Association of Western Pennsylvania and the Laborers' District Council of Western Pennsylvania ("Pension Trust Agreement"); and (2) the Laborers' District Council of Western Pennsylvania Welfare Fund Agreement and Declaration of Trust ("Welfare Trust Agreement").  Exs. 2 & 3 to Pl.'s Opp'n to Def.'s Mot. to Compel Arb. (ECF Nos. 39-2 & 39-3).  Article XII of the Pension Trust Agreement sets forth the provisions governing the collection of employer contributions or remittances.  Article XII provides, among other things, that the trustees shall have the right to determine, verify, or audit the amounts of contributions

paid or payable by each employer and that each employer shall make available to the trustees its payroll records and federal and state payroll tax returns. Pension Trust Agreement, Art. XII, § 5 (ECF No. 39-2 at 29). If an employer is determined to be delinquent with its required contributions, the trustees have the power to take any steps necessary to collect the delinquent contributions from the employer, including instituting a legal action either in federal or Pennsylvania state court. *Id.* at §§ 8-9 (ECF No. 39-2 at 30). In addition, Article XII provides: "The Trustees shall not be obligated to invoke or exhaust any grievance or arbitration procedure that might be contained in any Collective Bargaining Agreement or other written agreement with an Employer in order to compel an audit of the Employer's records or to collect unpaid Contributions or other remittances." *Id.* at § 12 (ECF No. 39-2 at 30).

Similarly, the Welfare Trust Agreement contains provisions for the collection of employer contributions that are almost identical to those contained in the Pension Trust Agreement, including a provision disclaiming any obligation to invoke or exhaust any grievance or arbitration procedures. *See* Welfare Trust Agreement, Art. VI, §§ 5, 8-9, 12 (ECF No. 39-3 at 8-10). Thus, the Trust Agreements, which Macson adopted and agreed to by signing the Letter of Assent (ECF No. 43-1), clearly state that the trustees are not required to exhaust any grievance or arbitration requirements in any written agreement with the employer, which clearly encompasses the PLA.

In order to avoid the application of Article XIII, Macson raises two arguments, Initially, Macson points to language that states that Section 2 does not apply to "core employees," and then argues that the employees for whom Plaintiff seeks unpaid

contributions are "core employees" as defined under Article VI, Section 9 of the PLA.

Therefore, Macson submits that the issues raised by Plaintiff's claims are subject to the

PLA's arbitration provision. As Plaintiff points out, there are several flaws in Macson's

argument. First, Macson's suggested interpretation of Section 2 is overly broad and

unreasonable. Section 2 requires contractors to pay all required contributions (at the

prevailing wage and benefits rates according to job classification) to established

employee fringe benefit funds. Section 2 further states that "[t]his section does not

apply to core employees . . .." To find, as Macson argues, that this latter statement

precludes the trustees from exercising their authority under the Trust Agreements to

bring legal action in federal court in order to conduct an audit and collect any

delinquent employer contributions, and instead subjects them to arbitration procedures

in an agreement to which they are not signatories, would be an unreasonable

interpretation of Section 2, especially when read in context with scope and purpose of

the PLA. Indeed, the preeminent purpose of the PLA is to promote efficiency in the

construction of the project, by providing a means for peaceful settlement of any and all

labor disputes and grievances between the *Unions and Owner*, or between the *Unions and*

*contractors*, and the avoidance of any strikes or work stoppage. *See* PLA, Art. I, § 1; Art.

2, § 2; Art. VII, §§ 1 & 2. *See also* Discussion *infra* at 15-16. Nowhere in the PLA,

including Article VII which sets forth the grievance and arbitration procedures, are

Plaintiff or the trustees mentioned by name, nor are they signatories to the PLA.

Rather, the Court finds that a reasonable interpretation of "[t]his section does not apply

to core employees" is simply that contractors do not have to make the required

contributions to established employee fringe benefit funds for core employees.

Second, Macson's argument assumes that the classification of its employees as core employees is an undisputed, proven fact. However, the exhibits submitted by Macson do not provide any evidence that its employees are core employees, and this fact is clearly disputed by Plaintiff. In reality, Macson's argument is nothing but a red herring, as it attempts to divert the Court's attention away from the real issue—whether there is an agreement to arbitrate between Plaintiff and Macson—which brings the Court to the final flaw in Macson's argument.

Macson's core employee argument goes to the substantive issue between it and Plaintiff—whether Macson owed any unpaid, required contributions to employee fringe benefit funds—not to whether an agreement to arbitrate exists in the first place. In this respect, Macson has put the proverbial cart before the horse. Therefore, even if Macson is not disputing the amounts owed for two union employees, and Plaintiff admits that no contributions are owed for core employees, that does not make the issue of whether Macson's other employees are core employees arbitrable, because that issue is not dispositive of whether an agreement to arbitrate exists in the first place. In addition, Macson's position would require piecemeal adjudication of this case—the union employees' contributions are not subject to arbitration but the core employees' contributions would be. That approach would be inconsistent with the intent of Congress in passing the FAA.

Next, Macson submits that Article XIII, Section 2 fails to properly incorporate the particular trust agreement(s) referenced therein, as Section 2 neither identified the

specific trust agreements nor attached them to the PLA. Moreover, Macson submits that the language of Section 2 should be interpreted to include only the Wage and Benefits section of the trust agreements, "specifying the detailed basis on which payments are to be paid into and paid out of such funds" (Def.'s Reply Br. at 9, ECF No. 43), not the entire trust agreement, including its litigation provisions. Because the PLA failed to clearly identify and therefore incorporate the trust agreements, Macson contends that the only remaining dispute resolution provision is the arbitration provision in the PLA. Macson's argument, while perhaps superficially appealing, lacks substance.

The Court finds it highly unlikely that contractors in the construction industry would not know which unions their trades people are affiliated with. Thus, a contractor engaged in the construction business, like Macson, would likely have employed similar trades people and made contributions to the same employee fringe benefit trust funds on other construction projects. Indeed, Macson's president admitted that Macson made contributions to the funds for both the Mt. Lebanon and Jefferson Hills Projects. Aff. of David Macioce, ¶¶ 4-9 (ECF No. 43-2 at 2-3). In addition, the Court rejects Macson's argument that the language in Section 2 should be narrowly interpreted to include only the Wage and Benefits section of the trust agreements. Section 2's reference to the trust agreements' "written terms . . . specifying the *detailed basis* on which payments are to be made into, and benefits paid out of, such Trust Funds" (emphasis added) can reasonably be construed to include any efforts needed to collect such payments owed but not contributed. More importantly, however, Macioce's understanding of the meaning of Art. XIII is not relevant to whether the Owner and Unions intended that Plaintiff would

be bound by the arbitration provisions in the PLA. Macson did not participate in the negotiations and drafting of the PLA but assented to its terms after its execution.

Finally, even if the court was to find that the trust agreements were not properly incorporated by reference, as explained below, there is no language in the PLA that subjects a claim brought by trust funds/trustees against a contractor to the arbitration provisions in the PLA. In this regard, Macson's argument attempts to divert the Court's attention away from the threshold issue of whether *Plaintiff* agreed to arbitrate its claims against contractors for unpaid contributions to the trust funds.

To that end, the Court turns to the plain language of the PLA to determine whether the parties to that agreement intended that the dispute between the Laborers' Combined Funds and/or its trustees and Macson over the audit and collection of Macson's contributions to employer-union fringe benefit plans would be subject to the grievance and arbitration procedures set forth in Article VII of the PLA. An examination of the relevant provisions of the PLA shows that it "applies exclusively to the construction work within the scope of this Agreement to be performed and related to the [Thomas Jefferson High School] Project[,] and its intended purpose is "to promote efficiency in the construction of the project . . . , to provide for the peaceful settlement of any and all labor disputes and grievances without strikes or lockouts, and to create uniformity in work rules, . . .." PLA, Art. I, § 1 (ECF No. 26-2 at 1). The PLA also provides that the Unions and their members "agree not to initiate, authorize, sanction, participate in or condone, or permit their members to engage in, any strike [or work stoppage or slowdown, or disruptive activity of any kind]. PLA, Art. II, § 2 (ECF No. 26-2 at 3). The scope of the

PLA "is specifically defined and limited to onsite construction work bid and contracted for by, or otherwise under the direction and control of the Owner for this Project." PLA, Art. IV, § 1 (ECF No. 26-2 at 4).

In Article VII, the PLA sets forth the Grievance and Arbitration Procedure, which Macson contends applies to Plaintiff's claim. Section 1 sets forth the procedure where the union has a "claim, dispute, question or other matter against the Owner under this Agreement[.]" Clearly, this section is not applicable here as the Laborers' Combined Funds is not a union[7] and, in any event, it has not brought suit against the Owner, West Jefferson Hills School District. Section 2, upon which Macson relies, provides:

> It is specifically agreed that in the event any disputes arise out of the interpretation or application of this Agreement between the unions and contractors, the same shall be settled by means of the procedures set out herein. No such grievance shall be recognized unless called in writing to the attention of the parties to the Agreement (or to the attention of the union by the contractor) within five (5) business days of the alleged violation was committed.

---

[7] "Under the pertinent provisions of both the Labor Management Relations Act and the Employee Retirement Income Security Act of 1974, it is clear that trust funds for the benefit of employees are separate entities apart from labor organizations." *NLRB v. Constr. & Gen. Laborers' Union Local 1140*, 577 F.2d 16, 20 n. 6 (8th Cir. 1978). *See also Talarico v. United Furniture Workers Pension Fund A*, 479 F. Supp. 1072, 1079 (D. Neb. 1979) (pension fund was a distinct and independent entity separate from the union and its local, and as such, was not bound by agreements entered into by the local affiliates of the union); *Huge v. Overly,* 445 F. Supp. 946, 947 (W.D.Pa. 1978) (trust fund constituted a distinct and independent entity separate from the union); *Zaucha v. Polar Water Co.,* 444 F. Supp. 602, 606 (W.D.Pa. 1978) (same) (citations omitted); *Teamsters Local Union No. 688 v. Mizerany Warehouse, Inc.,* 413 F. Supp. 911, 913 (E.D. Mo. 1974) (noting that pension fund was an entity separate from a labor union and holding that a release agreement entered into by the union and the employer was not binding on the pension fund).

PLA, Art. VII, § 2 (ECF No. 26-2 at 11-12). The Court construes this section to require that written notice of the grievance must be given to the parties to the PLA, or to the attention of the union by the contractor, in order for a grievance between the unions and contractors to move forward. As Plaintiff is neither a party to the PLA nor a union, it would not receive notice of any grievance, and therefore, could not be expected to comply with the arbitration provisions set forth Section 3 of Article VII.

Moreover, the plain language of Section 2 contemplates that the contractor will be making a grievance against the union, since it requires that the grievance be brought to the attention of the union *by the contractor*. Thus, even if the Laborers' Combined Fund was the Unions' agent, which it is not,[8] the situation here is distinguishable as the Laborers' Combined Funds brought suit against the contractor, and not vice versa.

Article XIII, Section 2 of the PLA sets forth the contractors' obligations with regard to contributions to "established employee benefit funds that accrue to the direct benefit of the employees (such as pension and annuity, health and welfare, vacation, apprenticeship, training funds)." PLA, Art. XIII, § 2 (ECF No. 26-2 at 17). That section further provides: "With respect to contributions required in this Section to Employee-Union jointly trusted funds, the contractor adopts and agrees to be bound by the written terms of the legally established trust agreement specifying the detailed basis on which

_____

[8] Plaintiff has admitted only that it is the *collection* agent for various fringe benefit funds, including the Welfare & Pension Funds, and certain employer associations and unions, including the Laborers' District Council of Western Pennsylvania and its affiliated local unions, the Construction Industry Advancement Program of Western Pennsylvania. (Compl., ¶¶ 3-5.) *See* Discussion *infra* at 18-20.

payments are to be made into, and benefits paid out of such Trust Funds." *Id.* ([ECF No. 26-2 at 17-18](#)).   By including this language in the PLA, it is clear that the Owner, Unions, and Macson—by executing the Letter of Assent—did not intend for the PLA to govern the collection of employer contributions to pension and welfare funds, but rather, specifically agreed that a contractor's contributions to trust funds would be governed by the terms of the trust agreements.    Thus, the adoption of, and agreement to be bound by, the trust agreements in Article XIII, and the lack of any reference to disputes between the trust funds/trustees and contractors in Article VII governing grievances and arbitration procedures, provides further evidence that the parties to the PLA did not intend that the PLA arbitration provision would govern Plaintiff's claim against Macson.

Moreover, since Plaintiff was not a signatory to the PLA, it could not agree to arbitrate its claim against Macson.  Nonetheless, Macson attempts to circumvent this fact by arguing that Plaintiff was acting as the Unions' agent.  The Court does not find any merit to this argument.  Macson relies solely on Plaintiff's statement in the Complaint that it is the collection agent for various fringe benefit funds, to support its position that Plaintiff has admitted its agency, presumably for all purposes, and therefore is bound to arbitration.  Macson's position is not supported by applicable precedent.

Macson relies on *Bouriez v. Carnegie Mellon University*, 359 F.3d 292 (3d Cir. 2004) for the proposition that common law principles of agency apply to arbitration agreements and can support an obligation of an agent to be bound by an arbitration provision.  Although the court of appeals in *Bouriez* acknowledged that a "party . . . can be compelled to arbitrate under an agreement, even if he or she did not sign that

agreement if common law principles of agency and contract support such an obligation

on his or her part, *id.* at 294, it emphasized that "an agent can only be bound by the

agreements of his principal when that principal acted with the agent's actual, implied,

or apparent authority[,]" *id.* (citing *Bel-Ray Co. v. Chemrite*, 181 F.3d 435, 445 (3d Cir.

1999)).  In *Bouriez,* as in the case at bar, there is no evidence that the principal—here, the

Unions—was acting with implied, actual or apparent authority for its alleged agent—

here, Laborers' Combined Funds—when the Unions signed the PLA.  Indeed, the

Plaintiff's only alleged agency relationship with certain employer associations and

unions is that of *collection* agent for contributions owed by employers for various

employee fringe benefit and pension plans.  Moreover, Laborers' Combined Funds

never became involved in the construction project which is the subject of the PLA, but

rather, attempted to audit and collect alleged unpaid contributions to various fringe

benefit funds from Macson, a contractor, sometime *after* execution of the PLA.

Macson, as the party asserting an agency relationship, bears the burden of proof

on that issue.  *Apex Fin. Corp.*, 369 A.2d at 485 (citing *Girard Trust Bank v. Sweeney*, 231

A.2d 407 (Pa. 1967)).[9]  Nothing in either the pleadings or the parties' filings indicates

that Plaintiff serves as the Unions' agent for any purpose other than for the limited

---

[9] The party with the burden of establishing an agency relationship need not provide
direct proof of specific authority, as long as "'it can be inferred from the facts that at
least an implied intention to create the relationship of principal and agent existed.'"
*Walton v. Johnson*, 66 A.3d 782, 787 (Pa. Super. Ct. 2013) (quoting *Commw. v. Maker*, 716
A.2d 619, 623 (Pa. Super. Ct. 1998), *aff'd per curiam* 761 A.2d 1167 (Pa. 2000)).  Agency
cannot be assumed, however, merely by showing that one person has done an act for
another.  *Id.* (citing *Ferry v. Fisher*, 709 A.2d 399, 405 n. 5 (Pa. Super. Ct. 1998)).

purpose of collecting employers' contributions to various fringe benefit funds.

Plaintiff's limited role as the Unions' collection agent stands in stark contrast to the role

of the agent in *Hinnant v. Am. Ingenuity, LLC*, 554 F. Supp. 2d 576, 582 n. 4 (E.D.Pa.

2008), cited by Macson, whom the court held was subject to the arbitration agreement.

In that case, the agent signed the agreement containing an arbitration provision as

general manager of company, was sole owner and officer of the company, and his

alleged misconduct was integral to and coextensive with the alleged misconduct of the

company. Unlike the agent in *Hinnant*, here Plaintiff—the Unions' alleged agent—is not

charged with any misconduct, and therefore, there can be no misconduct by Macson

that is integral to and coextensive with any misconduct by the Unions. Therefore, the

Court will not assume, merely from Plaintiff's limited role as collection agent, that an

agency relationship existed between the Unions and Plaintiff. *See Walton*, 66 A.3d at

787.[10]

---

[10] Similarly, Macson's reliance on *Alfarone v. Bernie Wolf Constr. Corp.*, 788 F.2d 76 (2d Cirl 1986), and *Central States Southeast & Southwest Areas Pension Fund v. Goggin Truck Line, Inc.*, 140 F.R.D. 362, (N.D. Ill. 1991), is misplaced. Notwithstanding that neither case is binding upon this Court, the cases are factually distinguishable, and therefore inapposite. In *Alfarone*, the trust agreements contained a provision that if the trustees were deadlocked as to whether to take any action to enforce payment of contributions to the funds, the trustees must submit the dispute to arbitration. 788 F.2d at 78. By contrast here, there is no such provision in trust agreements at issue. In *Goggin*, the CBA specifically stated that the union, employer, or *trustee* may invoke ADR, and one of the trustees participated in the negotiations of the CBA, and therefore the pension and health funds could not claim ignorance of the arbitration provision. Unlike the CBA in *Goggin*, the PLA does not mention the Laborers' Combined Funds or their trustees in the arbitration provision, and there is no evidence that any of the named trustees participated in the negotiation of the PLA. As discussed above, the plain language of the PLA does not manifest an intent to require the Plaintiff/trustees to arbitrate its contribution claims. Thus, like the trustees in *Schneider Moving & Storage Co. v. Robbins*,

As such, the Court concludes that no reasonable jury could find, on this record, that the Unions were acting with implied, actual, or apparent authority for Plaintiff in negotiating and agreeing to the terms of the PLA.  Therefore, Macson's attempt to show that Plaintiff agreed to arbitrate disputes over the collection of unpaid contributions to the trust funds based on an agency theory fails.

## IV.  <u>CONCLUSION</u>

In light of the explicit incorporation by the PLA of the trust agreement provisions governing employer/contractor contributions to trust funds, the lack of any explicit language in Article VII of the PLA making the grievance and arbitration procedure applicable to non-party trust funds, and the lack of any evidence to establish that Plaintiff was the agent of the unions for any purpose other than collecting employers' contributions to various fringe benefit funds, the Court concludes that the PLA does not govern Plaintiff's claim against Macson.  Accordingly, the Court finds that a valid and enforceable agreement to arbitrate does not exist between Plaintiff and Macson. Therefore, the Court will deny Defendant's motion to compel arbitration.  An appropriate order will follow.

Dated:  April 30, 2018                    BY THE COURT:


   /s  Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

_____

Plaintiff was not required to arbitrate its contribution claim against Macson before bringing this suit in federal court under Section 502 of ERISA.  466 U.S. 364, 376 (1984).